**BEFORE THE
UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | | |
|---|---|---|
| IN RE: PROTON-PUMP INHIBITOR PRODUCTS LIABILITY LITIGATION (NO. II) | §<br>§<br>§ | MDL No. 2789<br>**Oral Argument Requested** |

**INTERESTED PARTY RESPONSE OF PLAINTIFFS IRMA AND JAMES COLEMAN, ET AL. TO THE MOTION FOR TRANSFER AND CONSOLIDATION OF ACTIONS PURSUANT TO 28 U.S.C. § 1407 AND IN SUPPORT OF TRANSFER TO THE SOUTHERN DISTRICT OF ILLINOIS**

Pursuant to 28 U.S.C. § 1407 and Rule 6.2(e) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Interested Parties who are Plaintiffs in seven actions filed in the Southern District of Illinois (hereinafter referred to as "SD IL Interested Parties") respectfully submit this Response to the Motion for Transfer and Consolidation filed by Seeger Weiss, LLP (the "Seeger Weiss Motion").[1] *See* Docs. 3 and 3-1. The SD IL Interested Parties agree that transfer of all *branded prescription* and *branded over-the-counter*[2] actions alleging *kidney injuries*[3] related to *In re: Proton-Pump Inhibitor Products Liability Litigation (No. II)* (the "Actions") are appropriate for pretrial purposes and that centralization in one venue would provide efficiency and organization for the litigants and for the federal judiciary as provided in 28 U.S.C. § 1407. The SD IL Interested Parties respectfully submit that, for the reasons set forth below, the most suitable transferee venue is the United States District Court for the Southern District of Illinois before the Honorable David Herndon.

---

[1] This Interested Party Response is filed on behalf of the following plaintiffs: *Irma Coleman and James Coleman* (Case No. 3:17-cv-130, S.D. Ill.); *Kenneth Lloyd Dravland, Jr.* (Case No. 3:17-cv-133, S.D. Ill.); *Patricia Richardson* (Case No. 3:17-cv-406, S.D. Ill.); *Orlando McGill and Lasawanda McGill* (Case No. 3:17-cv-461, S.D. Ill.); *Terry Winters Sr.* (Case No. 3:17-cv-535, S.D. Ill.); *Marsha Richards* (Case No. 3:17-cv-609, S.D. Ill.).
[2] To date no generic drug manufactures have been named in any PPI case. In light of the United States Supreme Court ruling in *Pliva, Inc. v. Mensing*, 564 U.S. 604 (2011), the generic Proton Pump Inhibitor medications, to the best knowledge of undersigned counsel, are not under investigation by any plaintiffs' firm.
[3] The kidney injuries include Acute Interstitial Nephritis and Chronic Kidney Disease.

This Panel previously denied centralization for a number of reasons, including that the responding defendants all objected to centralization, that the defendants vary from action to action, that centralization may not serve convenience of defendants and their witnesses and that the defendants are competitors. *Proton-Pump Inhibitor Prods Liab. Litig.*, MDL No. 2757, 2017 U.S. Dist. LEXIS 15934 at *1-3 (J.P.M.L. Feb. 2017). In addition, this Panel pointed out that there will be defendant-specific discovery and that Proton Pump Inhibitors ("PPIs") are both prescription and over-the-counter drugs. *Id*. at *3-4. Finally, in its order, this Panel was unpersuaded as to the large number of actions that would be filed. *Id*. at *4. At oral argument, much of the discussion surrounded this Panel's concern that an MDL of this magnitude and complexity would be unmanageable for single judge for a variety of reasons. Panel Hr'g 5:21-8:2; 13:18-14:10; 14:25-17:23; 20:10-22:8 (Jan. 26, 2017).

Based upon the Seeger Weiss Motion, much has changed since the initial Panel decision. First, the defendants named in the majority of the cases now support the formation of a multidistrict litigation ("MDL"). *See* Doc. 3-1 at 3 (noting that Defendants AstraZeneca, Pfizer, and Wyeth support an MDL and that the Proctor & Gamble Defendants do not oppose an MDL).[4] Clearly, defendants' original position—that informal coordination would provide sufficient efficiencies—has not worked for these defendants. Second, there are now substantially more related cases on file. *See* Doc. 3-1 at 2-3. At the time the Seeger Weiss Motion was filed on June 2, 2017, there were more than 160 cases filed in at least 30 different federal courts scattered throughout the county. As of June 21, 2017, there are now over 180 PPI cases on file in over 33 different federal courts nationwide. Such increase in PPI filings has led to duplicative work for counsel and judicial inefficiencies as multiple judges are being asked to resolve similar, if not

---

[4] *See also* Doc. 55, MDL 2789 (arguing on behalf of the Proctor & Gamble Defendants that transfer of all Actions to a formal MDL is efficient, cost-effective, and the easiest method to achieve the intended benefits of coordination).

identical, issues from dispositive motions to scheduling and discovery matters. *See* Doc. 3-1 at 3. Third, all plaintiffs support centralization.

Finally, the Southern District of Illinois has emerged as a jurisdiction showing the willingness and ability to organize this complex litigation, and as result, it is the most advanced jurisdiction. Importantly, Judge Herndon has considerable experience in managing pharmaceutical MDLs involving serious and sometimes fatal injuries, and has demonstrated that what this Panel described as "unmanageable" (*see* Panel Hr'g 5:4-5:7) and a "headache" (*see* Panel Hr'g 5:21-5:24) at the previous oral argument, can in fact be organized effectively with an experienced and committed federal judge guiding the litigation. Therefore, it is respectfully submitted that the United States District Court for the Southern District of Illinois, and specifically the Honorable David Herndon, is the most appropriate forum for centralization.

**I.     ARGUMENT**

   **A. Centralization is appropriate because this complex litigation involving many plaintiffs and several defendants can be managed effectively by one Judge.**

At the Panel Hearing in January 2017, concern was raised that this litigation was too complex and seemed unmanageable for a single judge to handle. *See* Panel Hr'g 5:21-8:2. Much discussion was had that centralization would complicate the litigation and not provide the efficiencies contemplated by Title 28, Section 1407,[5] including a concern that the defendants are competitors involved in the same litigation. *See id.* at 4:9-8:2. To date, the concern of competing defendants has never been raised as an issue at any status conference related to ESI orders,

---

[5] Under Title 28, Section 1407, this Panel considers the following three factors when determining whether to authorize transfer and consolidation of multidistrict actions: (1) one or more common questions of fact are pending in different districts; (2) a transfer would serve the convenience of parties and witnesses; and (3) a transfer would promote the just and efficient conduct of the actions. 28 U.S.C. § 1407(a).

3

protective orders or scheduling issues.[6] In the Southern District of Illinois, for example, there are currently seven PPI cases[7] pending before Judge Herndon, and the cases involve three of the four major defendants: AstraZeneca Pharmaceuticals LP, AstraZeneca LP (the "AstraZeneca Defendants"), The Proctor & Gamble Manufacturing Company, The Proctor & Gamble Company (the "Proctor & Gamble Defendants"), Pfizer, Inc., Wyeth Pharmaceuticals, Inc., and Wyeth, Inc. (the "Pfizer Defendants"). Not once have defendants raised an issue that they manufacture or sell competing drugs or that this fact would present a problem in the progression of pretrial discovery. A global ESI Order has been entered as to the major defendants.[8] A global Protective Order has been entered. A global discovery order has been entered. An overall pretrial schedule, including deadlines for the production of documents and for Rule 30(b)(6) depositions, dates for the completion of discovery and certification of complete ESI production, and timelines for depositions of plaintiffs, non-experts, and experts, has been entered, as well as trial dates for the first three filed cases.

In addition, it is common that many of these plaintiffs will have multiple PPI product use involving different defendants. By way of example, three of the seven PPI cases pending in the

---

[6] This Panel has even recognized the benefits of transferring proceedings to districts hosting litigations involving similar and even competing pharmaceutical products. *See, e.g., In re: Am. Med Sys., Inc., Pelvic Repair Sys. Products Liab. Litig.*, 844 F. Supp. 2d 1359, 1360 (J.P.M.L. 2012) ("Chief Judge Joseph R. Goodwin . . . is currently presiding over MDL No. 2187, which involves claims of defects in similar pelvic surgical mesh products, and is uniquely situated to preside over the similar claims in these three [other] MDLs [involving] [] pelvic surgical mesh products . . . ."); *In re: Testosterone Replacement Therapy Prods. Liab. Litig.*, MDL 2545, 2014 WL 2547824 at *2 (J.P.M.L. 2014) (centralizing cases involving several different testosterone replacement therapy products in one district court on an industry-wide basis).

[7] The seven PPI cases before Judge Herndon include: *Irma Coleman and James Coleman v. AstraZeneca Pharmaceuticals, LP, et al.* (Case No. 3:17-cv-130, S.D. Ill.); *John Rosensteel and Pamela Rosensteel v. AstraZeneca Pharmaceuticals, LP, et al.* (Case No. 3:17-cv-131, S.D. Ill.); *Kenneth Lloyd Dravland, Jr. v. AstraZeneca Pharmaceuticals, LP, et al.* (Case No. 3:17-cv-133, S.D. Ill.); *Patricia Richardson v. AstraZeneca Pharmaceuticals, LP, et al.* (Case No. 3:17-cv-406, S.D. Ill.); *Orlando McGill and Lasawanda McGill v. AstraZeneca Pharmaceuticals, LP, et al.* (Case No. 3:17-cv-461, S.D. Ill.); *Terry Winters Sr. v. AstraZeneca Pharmaceuticals, LP, et al.* (Case No. 3:17-cv-535, S.D. Ill.); *Marsha Richards v. Wyeth Pharmaceuticals, Inc., et al.* (Case No. 3:17-cv-609, S.D. Ill.).

[8] Unlike the ESI Order entered in the District of New Jersey, Judge Herndon issued an ESI Order that covers all four of the major defendants. Moreover, the ESI Order entered in DNJ is limited to AstraZeneca and is an exact duplicate of the ESI order that was previously entered in SDIL.

Southern District of Illinois present use of two to three different PPI products involving various defendants. Moreover, almost half of the PPI cases pending before Judge Herndon involve both branded prescription and branded over-the-counter use of PPI products for the same plaintiff. It is inevitable that a large number of individual plaintiffs' claims will involve multiple defendants; to date, at least 40 plaintiffs nationwide used more than one of defendants' PPI medications and many used both over-the-counter and prescription PPIs. It would not be feasible to create multiple MDLs for the various defendants (or to not add a significant branded manufacturer to the MDL)[9] as all defendants will have some significant number of cases with mixed use.[10] In addition, the inefficiencies of excluding a substantial number of multi-use plaintiffs would not promote the organization that the majority of the defendants agree are needed.  The complexity of this litigation is best served by centralization of all brand name drugs—both prescription and over-the-counter—comprised of four defendant groups: AstraZeneca, Takeda, Pfizer/Wyeth, and Proctor & Gamble.

### B. **Centralization is appropriate because Proton Pump Inhibitors have a class effect relating to chemical structure, the mechanism of action, and pharmacological impact.**

Proton Pump Inhibitors are a "class effect" drug, meaning each prescription and over-the-counter formulation has a substantially similar chemical makeup, the same biochemical interaction within the body, and the same outcome in treating gastric acid medical conditions. The science is identical as to each PPI medication and thus, centralization is prudent to manage matters pertaining to causation and discovery involving pharmacology, pharmacovigilance,

---

[9] Upon information and belief, Takeda does not support centralization. As of June 21, 2017, Takeda is named in 24 PPI actions in 14 different district courts. Of those actions, Takeda is named as a co-defendant in 16 actions. Excluding Takeda from a class-wide MDL (or creating a Takeda only MDL) would not be efficient. Additionally, given the high volume of PPI cases filed since the Panel Hearing in January, it is inevitable that many more PPI cases naming Takeda—either individually or as a co-defendant—will be filed in the coming months.

[10] *See* Panel Hr'g 35:17-36:39:9 (discussing that users of multiple PPIs would have to split their cause of action for purposes of discovery and pretrial matters if the MDL was a AstraZeneca only and noting that this would essentially leave plaintiffs with "empty chairs all over the courtroom").

medical affairs, and other overlapping medical issues. Additionally, given the PPI class effect, the FDA approval process will largely overlap from one PPI brand to the next. The overlapping issues are evident by the mere fact that the label change for Acute Interstitial Nephritis ("AIN") applied across the board to all prescription PPI medications. These label changes and updates were supported by a large body of epidemiological studies showing an association between AIN and other kidney injuries in PPI users,[11] and were directed to PPIs as a class—not as individual drugs.[12]  Likewise, all plaintiffs are similarly situated such that each individual ingested a PPI medication (whether by prescription or over-the-counter) and suffered a kidney injury.[13] Therefore, there will be common discovery related to the development of this class of drugs, common scientific issues related to the mechanism of injuries, common liability issues related to failure to update labeling, and common discovery of plaintiffs' medical histories and injuries. Centralization will provide all defendants and all plaintiffs a vehicle to organize the common discovery.

---

[11] *See* Badov, D., et al. Acute Interstitial Nephritis Secondary To Omeprazole, *Nephrol Dial Transplant* (1997) 12:2414–2416 (finding a causal connection between Omeprazole (Prilosec) and Interstitial Nephritis in the elderly); Torpey, N., et al. *Drug-Induced Tubulo-Interstitial Nephritis Secondary To Proton Pump Inhibitors: Experience From A Single UK Renal Unit*, NEPHROL. DIAL. TRANSPLANT. (2004) 19:1441-1446 (concluding that eight of fourteen presumed drug-related AIN were attributed to the PPIs Omeprazole (Prilosec) and Lansoprazole (Prevacid)); Brewster, UC and MA Perazella. *Acute Kidney Injury Following Proton Pump Inhibitor Therapy*, KIDNEY INTERNATIONAL (2007) 71, 589–5 (declaring that PPIs are "clearly associated with the development of AIN" and finding that the studied PPI patients were "left with some level of chronic kidney disease."); Klepser, D., et al., *Proton Pump Inhibitors and Acute Kidney Injury: A Nested Case-Control Study*, BMC NEPHROLOGY (2013) 14:150 (concluding that "patients with a renal disease diagnosis were twice as likely to have used a previous prescription for a PPI" and calling for an increased recognized of patient reports or clinical developments of renal disease to prevent further injury.); Lazarus, B., et al. *Proton Pump Inhibitor Use and the Risk of Chronic Kidney Disease*, JAMA INTERN. MED., published online 11 Jan. 2016 (finding PPI use to be independently associated with a 20-50% higher risk of Chronic Kidney Disease.).
[12] Geevasinga, N., et al. *Proton Pump Inhibitors and Acute Interstitial Nephritis*, CLINICAL GASTROENTEROLOGY AND HEPATOLOGY, (2006) 4:597-604 (finding evidence "to incriminate all commercially available PPIs, suggesting there is a class effect" and declaring that "failure to recognize this entity might have catastrophic long-term consequences, including chronic kidney disease.").
[13] *See, supra,* page 1 FN 3.

### C. Centralization will provide the most efficient pretrial discovery for litigants and the judiciary.

This Panel has specifically found centralization is appropriate where it "will eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel, and the judiciary." *In re: Neomedic Pelvic Repair Sys. Products Liab. Litig.*, 999 F. Supp. 2d 1371, 1372 (J.P.M.L. 2014); *see also In re: Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig. (No. II)*, 997 F. Supp. 2d 1354, 1357 (J.P.M.L. 2014) (citing same); *Testosterone Replacement Therapy Prods. Liab. Litig.*, 2014 WL 2547824 at *2 (J.P.M.L. 2014) (holding that centralization of claims "will reduce potentially costly expert discovery, facilitate the establishment of a uniformed pretrial approach to these cases, reduce the potential for inconsistent rulings . . . and conserve the resources of the parties, their counsel, and the judiciary."). Here, consolidation will eliminate duplicative discovery by coordinating the production of documents under the same ESI format, limiting the depositions of employee witnesses and plaintiffs with multi-product use to only one, and providing uniform discovery responses through Plaintiff Fact Sheets ("PFSs") and Defendant Fact Sheet ("DFSs"). Likewise, inconsistent pretrial rulings are absolved by having one federal judge preside over all matters, and counsel for the parties will only be appearing at one regular status conference.

Given that there are thirty-three federal judges currently presiding over PPI cases nationwide, there is a likely to be inconsistent rulings on both pretrial and dispositive motions, such as *Daubert* hearings. To date, there have been more than sixteen court conferences, forty pretrial motions filed, and many formal and informal meet-and-confers have occurred, often involving the same counsel but not providing uniform outcomes. *See* Doc. 3-1 at 3. Consolidation and centralization to one federal judge is the only cure to these duplicative efforts

and potentially disparate rulings. Today, the inconsistencies and inefficiencies are reflected cross-jurisdictionally.

For example, the AstraZeneca Defendants agreed to a non-bifurcated discovery schedule in the Southern District of Illinois cases but conversely sought bifurcation in having discovery on general causation before any other discovery in the District of Kansas.[14] The AstraZeneca Defendants yet again sought the same bifurcated discovery schedule in the Southern District of Ohio, even despite the fact that plaintiffs' counsel was the same in most of the cases.[15]  As another example, Judge Herndon has already ordered native productions in the Southern District of Illinois, yet defendants in the Eastern District of Pennsylvania are arguing for non-native productions, *even though these defendants will be producing native productions in the Southern District of Illinois*. These inconsistencies brought before different federal judges present an issue for contrasting rulings across the districts and inefficiencies with discovery.

Therefore, transfer to one federal judge is the most efficient means to resolve the Actions. One judge will have the ability to make consistent rulings on the pleadings and will provide uniform pretrial orders.[16] One judge will also be able to issue consistent rulings on dispositive motions. Finally, having one federal judge will allow for coordinated scheduling as the new cases are filed.

### D. The Southern District of Illinois is the Most Appropriate Transferee Court for Consolidation and Coordination.

The Southern District of Illinois, and Judge Herndon specifically, is the most appropriate transferee venue. Judge Herndon currently has a master docket of PPI cases—all of which are the

---

[14] The PPI action pending in the District of Kansas is *Jackie Koon v. AstraZeneca Pharmaceuticals, LP, et al.* (Case No. 2:16-cv-02605).

[15] The PPI action pending in the Southern District of Ohio is *Joey Burnett v. AstraZeneca Pharmaceuticals, LP, et al.* (Case No. 2:16-cv-00894). The law firm Douglas & London represents both *Koon* and *Burnett* in addition to representing two plaintiffs in the Southern District of Illinois.

[16] There have already been inconsistent rulings, including those on Rule 12(b)(6), and there is already an appeal pending in the 9th Circuit for a dismissal on the pleadings.

most advanced into the pretrial discovery phase than any other district with PPI cases. Judge Herndon has a proven track record of experience in effectively and efficiently managing large pharmaceutical MDLs. Therefore, the Actions are most suited for transfer to the Southern District of Illinois and Judge Herndon.

   **1. Judge Herndon sitting in the Southern District of Illinois has a well-organized and advanced master PPI docket.**

Recognizing that the PPI cases pending before him involve many plaintiffs and multiple competing defendants, Judge Herndon is creating a master PPI docket for the sole purpose of organization and efficiency. *See* Exhibit A, email from Judge Herndon's Clerk regarding the formation of the master PPI docket. Accordingly, all pretrial orders will apply in all currently filed and subsequently filed PPI cases. What's more, Judge Herndon's PPI docket is the most advanced compared to any other PPI docket in other district courts:

- On April 4, 2017, the parties held a formal Meet and Confer to discuss a scheduling plan and discovery matters.

- On April 24, 2017, Judge Herndon hosted a Rule 26(f) Scheduling Conference.

- On May 1, 2017, Plaintiffs' counsel served Rule 30(b)(6) deposition notices on all Defendants.

- On May 3, 2017, the parties submitted their proposed Protective Orders.

- On May 4, 2017, the parties submitted their proposed ESI Order.

- On May 5, 2017, Judge Herndon entered a Protective Order.

- On May 9, 2017, Judge Herndon entered an ESI Oder.

- On May 10, 2017, the AZ Defendants served their discovery requests on Plaintiffs' counsel in all actions.

- On May 16, 2017, Plaintiffs' counsel served Plaintiffs' First Request for Production on all defendants.

- On June 1, 2017, the Proctor & Gamble Defendants served their discovery requests in two of the PPI cases.

- On June 2, 2017, the AstraZeneca Defendants produced 635,244 pages of documents.

- On June 15, 2017, counsel for Plaintiffs and Defendants appeared before Judge Herndon for a status conference.

- On June 16, 2017, the Proctor & Gamble defendants produced 201 documents.

- On June 19, 2017, Plaintiffs responded to Defendants discovery requests.

- On June 22, 2017, the parties have exchanged an extensive list of search terms to aid the discovery process.

- On June 27, 2017, pursuant to the discussion before Judge Herndon at the June 15th status conference, Plaintiffs provided to Defendants both a proposed Deposition Protocol, as well as a proposed Privileged Document Protocol Order. Meet and confers regarding these topics will take place in the coming week.

- On June 28 and June 29, 2017, the parties are scheduled to meet and confer regarding search terms.

- On July 12, 2017, the AstraZeneca Defendants will produce a witness to testify about marketing and regulatory affairs.

- On July 17, 2017, Judge Herndon will hold another status conference.

- On July 21, 2017, the AstraZeneca Defendants will be producing a witness to testify about corporation organization.

- On August 3, 2017, the Proctor & Gamble Defendants will produce a witness to testify about ESI.

The aforementioned organization and developments of the PPI cases pending in the Southern District of Illinois are a direct reflection of Judge Herndon's dedication and ability to effectively manage and oversee a caseload that involves complex pharmaceutical matters. Before the July 27, 2017 Panel Hearing, Judge Herndon will have hosted three status conferences. Moreover, Judge Herndon has ensured that there is a stenographic record for each of these conferences, thus allowing any incoming litigants to read and understand exactly what the Court

said and did during these important hearings. Furthermore, not only is the production of documents already underway, but Plaintiffs' counsel have already twice met with and engaged an experienced MDL ESI service provider to assist with the ESI that has been and will be forthcoming. Furthermore, the ESI repository, where the ESI will be hosted, is already established in the Southern District of Illinois. Reviewing credentials for the hosting platform have been distributed to and utilized by lawyers around the country to review the productions that have already occurred. The ESI service provider is about to analyze the initial productions for issues, so that the parties can iron out wrinkles now. Given that discovery has been answered by the first three plaintiffs, Rule 30(b)(6) depositions are scheduled with several set before the July 2017 Panel Hearing, and negotiations regarding deposition protocol and privilege logs are in progress and likely to be completed soon. It is evident that Judge Herndon prioritizes complex litigation in order to ensure an efficient judicial process.

Of note, all PPI cases pending in the Southern District of Illinois involve plaintiffs who are citizens of and domiciled in the Southern District of Illinois, which contrasts that of other PPI cases pending in other district courts, namely the Eastern District of Pennsylvania where many plaintiffs from different states have filed cases in that District. Given the recent decision of *Bristol-Myers Squibb Co., v. Superior Court*, 2017 U.S. LEXIS 3873 (2017), personal jurisdiction is lacking for those plaintiffs. Similarly, the large number of cases pending in the District of New Jersey is inflated by the filing of plaintiffs *not* injured in or living in New Jersey. When total case counts are compared by cases properly venued in each district, the Southern District of Illinois has more *appropriately* filed cases than either the District of New Jersey or the Eastern District of Pennsylvania.

Additionally, there is already broad involvement in the Southern District of Illinois by all of the plaintiffs' lawyers leading these cases at this juncture. Paul Pennock, Esq. (New York) and Brad Honnold, Esq. (Missouri) will be taking the very first deposition in the Southern District of Illinois litigation, and Tracy Finken, Esq. (Pennsylvania), Neil Overholtz, Esq. (Florida) and Dana Hantack, Esq. (associated with the undersigned) will be taking the other currently scheduled depositions. Further, these firms and others working together in the Southern District of Illinois have already collaborated with and retained experts for the litigation. My co-counsel and I have been spearheading communications with all plaintiffs' counsel in the country through both regular conference calls with dozens of lawyers, as well as in-person meetings.

**2. Judge David Herndon sitting in the Southern District of Illinois is an experienced jurist with the ability to efficiently manage this litigation.**

Judge Herndon has had extensive experience managing complex MDLs—and doing so simultaneously. In 2009, this Panel found the Southern District of Illinois to be the most appropriate forum for *In re: Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Products Liability Litigation*, MDL 2100 ("*Yaz MDL*"). *See* Exhibit B, Transfer Order, 09-md-2100, Doc. 984. In 2012, this Panel also found the Southern District of Illinois to be the best forum for *In re: Pradaxa (Dabigatran Etexilate) Products Liability Litigation*, MDL 2385 ("*Pradaxa MDL*"). *See* Exhibit C, Transfer Order, 12-md-2385, Doc. 106 (transferring the *Pradaxa MDL* to Judge Herndon because, in part, "Judge Herndon, an experienced MDL judge, has deftly presided over *In re Yasmin and Yaz (Drospirenone) Marketing, Sales Practices & Products Liability Litigation*, 655 F. Supp. 2d 1343 (J.P.M.L. 2009), another large pharmaceutical products liability litigation.").

The *Yaz MDL* involved 18,000 cases and three separate and distinct types of injuries alleged to have been caused by the same product. Separate discovery tracks as well as expert

12

disclosures were managed efficiently. Numerous extensive *Daubert* opinions were rendered in less than 24 months from centralization. Judge Herndon analyzed and ruled on issues related to foreign discovery from Europe involving privacy laws and is therefore familiar with these issues. The *Yaz MDL* is essentially concluded; all but 5 cases have now settled or been disposed of by way of dismissals, remands, or transfers to the original district courts. *See* Doc 4145 (Case No. 3:09-md-02100-DRH-PMF) attached hereto as Exhibit D.

Among other notable actions, Judge Herndon, in coordination with the three state court judges,[17] established a joint deposition protocol followed by all parties from all four state court coordinated jurisdictions, coordinated and conducted joint status conferences which involved all four judges, including but not limited to, coordinating a joint conference to evaluate the admissibility of the parties' expert witnesses, and appointed state-federal liaisons who were charged with keeping him informed of activities in the respective state court proceedings to foster efficiency and cooperation.

In the *Pradaxa MDL*, the parties reached a nationwide settlement involving more than 4,500 claimants in both federal and state court in just less than twenty-two (22) months from the time this Panel transferred the cases to the Southern District of Illinois. Within the same timeframe, Judge Herndon effectively presided over twenty-eight (28) status hearings and entered eighty-five (85) Case Management Orders. Judge Herndon also managed and resolved multifaceted foreign discovery issues and privacy issues relating to European Union law, just as he effectively did in the *Yaz MDL*. Notably, counsel for the AstraZeneca Defendants has told plaintiffs' counsel that most of the scientists and doctors who developed the AstraZeneca PPI

---

[17] Those judges included (1) Judge Moss of the Philadelphia Court of Common Pleas; (2) Judge Martinotti previously of the Superior Court of New Jersey for Bergen County, New Jersey; and (3) Judge Kuhl of the Superior Court of California for the County of Los Angeles.

products are from Sweden. Having an experienced federal judge presiding over foreign discovery is a benefit both to the defendants as well as the plaintiffs.

Both the *Yaz MDL* and the *Pradaxa MDL* are effectively concluded. Essentially all cases in the *Yaz MDL* have resolved either through settlement, dismissal, remand, or transfer to the original district courts. And, the CTOs in both the *Yaz MDL* and the *Pradaxa MDL* have been vacated. Accordingly, Judge Herndon's caseload is ripe for another pharmaceutical MDL. Given Judge Herndon's historical experience managing complex pharmaceutical MDLs and the fact that he is already effectively managing a master PPI docket involving four competing pharmaceutical manufacturers, it is respectfully submitted that he is well-suited to handle this MDL.

**3. The Southern District of Illinois is a central and convenient venue.**

The Southern District of Illinois is a central and convenient location for travel for hearings and trial. This Panel has emphasized that "although air travel renders both [coasts of the United States, California and New York] readily accessible, there is still something to be said for the convenience of a geographically central forum." *In re Library Editions of Children's Books*, 297 F. Supp. 385, 387 (J.P.M.L. 1968); *See also In re: Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*, 883 F. Supp. 2d 1355, 1356 (J.P.M.L. 2012) ("[T]he Southern District of Illinois' geographically central location and accessibility also commend it for this nationwide products liability litigation."); *In re: General Motors Corp. Dex-Cool Prods. Liab. Litig.*, 293 F. Supp. 2d 1381, 1382 (J.P.M.L. 2003) (explaining that the Southern District of Illinois is an appropriate transferee district in part because it "is centrally located in relation to the parties.").

As with any complex products liability case, there will be witnesses on behalf of the Plaintiffs and Defendants who are located in various states. The Plaintiffs, along with their

prescribing and treating physicians, will certainly be scattered across the nation. And based on prior experience adjudicating claims in MDLs, Plaintiffs anticipate that corporate and expert witnesses will not be located in one area. Therefore, a central location for an MDL is important for the convenience of all parties involved. Additionally, the Southern District of Illinois courthouse is in close proximity to Lambert-St. Louis International Airport, and thus provides for easy same-day travel for the parties.[18] Furthermore, there are numerous local hotels, including but not limited to the Four Seasons, Westin, Hyatt, Sheraton, two Hiltons, and multiple Drury Inns that are centrally located in downtown St. Louis, which is minutes from the courthouse. In addition, the location offers economical choices for food, gas, and transportation. Therefore, as a centrally located district, the Southern District of Illinois is a convenient and appropriate forum for the transfer and consolidation of all actions.

## II.     CONCLUSION

For the foregoing reasons, the SD IL Interested Parties respectfully request that the Actions be consolidated to the Southern District of Illinois before the Honorable David Herndon for pretrial proceedings pursuant to Section 1407.

Dated: June 27, 2017        /s/ Roger C. Denton
ROGER C. DENTON (IL #6182610)
**Schlichter, Bogard & Denton, LLP**
100 South 4th Street, Suite 1200
St. Louis, MO 63102
Phone: 314-621-6115
Fax: 314-721-1365
Email: rdenton@uselaws.com

---

[18] According to Google Maps, the courthouse is only 15.9 miles and 25 minutes away from the International Airport. See <u>Exhibit E</u>, Google Maps.

Attorney for Plaintiffs: *Irma Coleman and James Coleman*; *Kenneth Lloyd Dravland, Jr.*; *Patricia Richardson*; *Orlando McGill and Lasawanda McGill*; *Terry Winters Sr.; Marsha Richards.*