**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: PROTON-PUMP INHIBITOR PRODUCTS LIABILITY LITIGATION (NO. II) | MDL Docket No. 2789 |

**MEMORANDUM IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR
TRANSFER OF ACTIONS TO THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY PURSUANT TO 28 U.S.C. § 1407 AND JPML RULE 7.2
FOR COORDINATED AND CONSOLIDATED PRETRIAL PROCEEDINGS**

Christopher A. Seeger
Jeffrey Grand
Daniel R. Leathers
SEEGER WEISS LLP
77 Water Street
New York, New York 10005
Tel: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com
jgrand@seegerweiss.com
dleathers@seegerweiss.com
*Attorneys for Movant-Plaintiffs*

I.     **INTRODUCTION**

In a large reversal from MDL 2757 ("*PPI No. I*") and as evidenced by the recently-filed responses to Movants' petition, the majority of defendants now support centralization of the Proton Pump Inhibitor ("PPI") cases and specifically, support centralization in the District of New Jersey before Judge Claire C. Cecchi. Dkt. No. 55 (Proctor & Gamble support); Dkt. No. 60 (Pfizer support); Dkt. No. 63 (AstraZeneca support). Further, no plaintiffs oppose centralization, and all but one plaintiff-group supports centralization in the District of New Jersey. Dkt. Nos. 50, 62, 68, 69 & 75 (supporting centralization in the D.N.J); Dkt. No. 71 (supporting centralization, but in the S.D. Ill.).

Indeed, the only parties opposed to centralization of the PPI cases are the Takeda and Novartis Consumer Health defendants. Dkt. No. 61 (Takeda opposition); Dkt. No. 54 (Novartis Consumer Health opposition).[1] In their opposition to Movants' petition, these defendants focus on theoretical obstacles that a multi-defendant MDL would present. First, multi-defendant MDLs are not novel and there is no reason that a multi-defendant consolidation will not be effective for the PPI litigation. Second, and with respect to Takeda, the twenty-five cases in which Takeda is already named, alone, would suffice to support an MDL, despite its contentions otherwise. And third, Takeda and Novartis's request to sever or exclude claims against them should a PPI MDL be formed runs counter to the very purpose of multi-district litigation: efficiency.

Given the broad support for centralization and as explained more fully below, Movants respectfully request that the Panel grant its motion for centralization, and specifically, for centralization of the PPI cases in the District of New Jersey before Judge Claire C. Cecchi.

---

[1] The remaining Novartis Defendants take no position on consolidation of the PPI cases. Rather they oppose their inclusion in an MDL, as they have been dismissed from the sole federal PPI case in which they were named. Dkt. No. 56.

1

II.     ARGUMENT

    A.      **Multi-Defendant PPI MDL Would Create Judicial Efficiencies**

Takeda and Novartis present this Panel with a parade of horribles that may come to fruition should the Panel centralize the PPI actions. This Panel has centralized many multi-defendant MDLs before, more than just the cases cited in Movants' opening brief. [2] Just as in other MDLs involving multiple defendants, the court handling a PPI MDL could address multiple-defendant issues through staggered or separate discovery and trial schedules. In fact, a multi-defendant MDL that this court centralized relatively recently has done just that. *See In re: AndroGel Products Liab. Litig.*, 24 F. Supp. 3d 1378 (J.P.M.L. 2014) (centralizing claims against multiple defendants involving six testosterone replacement therapy drugs). In the Testosterone Replacement Therapy Products MDL, Judge Kennelly in the Northern District of Illinois set staggered bellwether trials involving different products. *See, e.g., In RE: Testosterone Replacement Therapy Products Liability Litigation*, MDL 2545, No. 1:14-CV-01748 (N.D. Ill), Dkt. No. 2032 (setting bellwether trials against defendant Eli Lilly and Co.); *id.* at Dkt. No. 2018 (resetting bellwether trials against defendant AbbVie Inc.). Similarly, here, the Judge handling a PPI MDL could set separate tracks for cases involving each specific PPI or combinations of PPIs. *See* Dkt. No. 3-1, at 4 (outlining the PPIs at issue).

Further, while the Takeda and Novartis defendants express concerns about difficulties in protecting trade secrets and confidential information in an MDL involving competitor

---

[2] *See In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 201 F. Supp. 3d 1375, 1378 (J.P.M.L. 2016) ("a single, multi-product MDL is necessary to ensure the just and efficient conduct of this litigation"); *In re Walgreens Herbal Supplements Mktg. & Sales Practices Litig.*, 109 F. Supp. 3d 1373, 1375 (J.P.M.L. 2015) ("a single MDL encompassing all four retailers is necessary to ensure the just and efficient conduct of this litigation"); *In re Incretin Mimetics Prods. Liab. Litig.*, 968 F. Supp. 2d 1345, 1346-47 (J.P.M.L. 2013) (centralizing actions against competing defendants which manufactured four similar diabetes drugs that allegedly caused pancreatic cancer); *In re Welding Rod Products Liab. Litig.,* 269 F. Supp. 2d 1365 (J.P.M.L. 2003) (centralizing actions involving more than ten individual defendants where the plaintiffs alleged personal injuries caused by exposure to welding fumes); and *In re Phenylpropanolamine (PPA) Products Liab. Litig.*, 173 F. Supp. 2d 1377 (J.P.M.L. 2001) (centralizing actions involving eight different pharmaceutical defendants manufacturing nasal decongestants).

defendants, they fail to acknowledge that the Protective Orders entered in the District of New Jersey and Southern District of Illinois include additional protections to address competitive concerns.  Notably, the AstraZeneca, Pfizer, and Proctor and Gamble defendants have raised no such concerns.

Moreover, the proposed MDL does not contain the laundry-list of products that Takeda has purported will be implicated.  Indeed, to Movants' knowledge and counter to Takeda's assertion, no case has been brought involving any generic PPI. *Contra* Dkt. No. 61, at 7 (Takeda's representation of "numerous" PPIs in generic, prescription, and over-the-counter versions). In short, only seven brand-name products have been implicated in the complaints filed thus far, and of those products, there will be substantial overlap in discovery between the prescription and over-the-counter iterations of Prilosec, Prevacid, and Nexium. For ease of reference, Plaintiffs provide the following charts of PPIs, both prescription and over-the-counter, that are at issue, and the corresponding defendant(s):

Prescription PPIs

| **Brand Name** | **Manufacturer/Defendant** |
|---|---|
| Prilosec | AstraZeneca |
| Prevacid | Takeda |
| Protonix | Pfizer |
| Nexium | AstraZeneca |

Over-the-Counter PPIs

| **Brand Name** | **Manufacturer/Defendant(s)** |
|---|---|
| Prilosec OTC | AstraZeneca / Procter & Gamble |
| Prevacid 24 Hour | Takeda / Novartis |
| Nexium 24 Hour | AstraZeneca / Pfizer |

It makes little sense to continue litigating such cases in multiple jurisdictions.  Of the 155 cases naming AstraZeneca, Takeda is named in 25 cases, Procter & Gamble Company is named in 14 cases, and Pfizer and/or its subsidiaries are named in 11 cases.  These actions name multiple manufacturers in the same case because plaintiffs used different PPI products during the course of their treatment. That is to be expected given the chronic nature of the ailments that

PPIs are intended to treat, such as gastric acid reflux. It is for that very reason – the commonality of multiple PPI product use – that it makes sense to have all named defendants in one MDL. Where plaintiffs allege the use of multiple similar products, centralization is appropriate because it "suggests that discovery specific to the plaintiffs in those cases will involve many of the same or substantially similar documents and witnesses." *In re Incretin Mimetics Prods. Liab. Litig.*, 968 F. Supp. 2d 1345, 1346-47 (J.P.M.L. 2013) (centralizing actions against competing defendants which manufactured four similar diabetes drugs that allegedly caused pancreatic cancer).

### B. There are Sufficient Cases Pending Against Takeda for it to be Involved in a PPI MDL

As Takeda admits, "[t]here are presently 25 cases against Takeda in federal courts across 14 jurisdictions." Dkt. No. 61, at 3. Yet Takeda's first argument in opposition to centralization is that such a number is too insignificant to warrant its inclusion in the MDL, or at least it would be premature as of this date. *Id.*, at 4. This Panel, of course, has centralized product liability cases with far fewer pending actions than 25, though. *See, e.g., In re: Wright Med. Tech., Inc., Conserve Hip Implant Prod. Liab. Litig.*, 844 F. Supp. 2d 1371, 1371 (J.P.M.L. 2012) (5 pending action); *In re Ethicon Physiomesh Flexible Composite Hernia Mesh Prod. Liab. Litig.*, No. MDL 2782, 2017 WL 2402828 (J.P.M.L., June 2, 2017) (9 pending actions); *In re Medtronic, Inc., Implantable Defibrillators Prod. Liab. Litig.*, 408 F. Supp. 2d 1351 (J.P.M.L. 2005) (22 pending actions); *In re Guidant Corp. Implantable Defibrillators Prod. Liab. Litig.*, 398 F. Supp. 2d 1371, 1372 (J.P.M.L. 2005) (6 pending actions); *In re Kugel Mesh Hernia Patch Prod. Liab. Litig.*, 493 F. Supp. 2d 1371, 1371 (J.P.M.L. 2007) (13 pending actions). Thus, it makes little sense to exclude Takeda from a PPI MDL.

### C. Severing or Excluding Takeda and/or Novartis From the Actions Would be Inefficient

Takeda and Novartis take the position that, even if a PPI MDL is formed, they each should be excluded and the Panel should, as such cases are filed (and as applicable to the ones

4

already filed) "separate any claim[s]" against them. 28 U.S.C. § 1407(a). But the three cases that Takeda and Novartis cite to support such a position are inapposite to the centralization question presented here. Moreover, such an action would be counter-productive to the primary purpose of multidistrict litigation: efficiency.

Takeda and Novartis cite to *In re Vioxx Prod. Liab. Litig.*, 360 F. Supp. 2d 1352, 1354 (J.P.M.L. 2005), *In re Celexa and Lexapro Prod. Liab. Litig.*, 416 F. Supp. 2d 1361, 1363 (J.P.M.L. 2006), and *In re Seroquel Prod. Liab. Litig.*, 447 F. Supp. 2d 1376, 1378 (J.P.M.L. 2006) in support of their contention that this Panel has previously severed actions. None of the cited cases, however, support defendants' position. The *Vioxx* Panel decision to which Takeda cites concerned one plaintiff's opposition to centralization of his case because it concerned "additional claims relating to a different prescription medication not involved" in the MDL, i.e., a non-Vioxx pharmaceutical. *Vioxx,* at 1353.  Because of the plaintiff's objection to centralization (apparently without opposition) of his unique Vioxx and other drug case, the Panel returned the *whole* action to its originating court. *Id.* at 1354.  It did not sever the Vioxx claims from those interwoven with another pharmaceutical.

Similarly, in *Celexa*, one plaintiff opposed the consolidation of his action with the Celexa and Lexapro MDL because it also involved another non-Celexa or Lexapro pharmaceutical. *Celexa*, at 1363. Again, facing no opposition, this unique Celexa/Lexapro and other drug combination case was returned *in whole* by the Panel to its originating court. *Id.* It did not sever the Celexa/Lexapro claims from the other drug claims.

Finally, the *Seroquel* Panel opinion is similarly inapposite. It merely states that, in centralizing Seroquel claims, over defendants' objections, that "that claims involving prescription drugs other than Seroquel do not share sufficient questions of fact with claims relating to Seroquel to warrant inclusion of the former claims in [the] MDL." *Seroquel*, at 1378. No cases were severed.

As explained above, this proposed PPI MDL does not merely involve a singular instance of mixed-use than can be ignored for the purposes of consolidation. At least 40 of the pending

5

actions are multi-PPI use cases. To throw those cases by the way-side would be to lose the efficiencies discussed above and which are widely recognized in MDLs. Moreover, Takeda and Novartis seek further action by this Panel that will create an unworkable situation—that any claims against them and MDL defendants be severed and the claims against Takeda and Novartis remanded back to the originating court. Even presupposing that the Panel was inclined to sever complaint actions 'down the middle,' by separating claims against some defendants from others in multi-defendant cases, the Panel would be required to simultaneously then "remand any of such [separate] claims [against Takeda or Novartis] before the remainder of the action [still pending in the MDL] is remanded." 28 U.S.C. § 1407(a). In other words, instead of the streamlined-process whereby all actions are consolidated and handled in an efficient manner as directed by the judge overseeing the MDL, numerous cases would be split in two – to be litigated simultaneously in two different courts.

For obvious reasons, this is contrary to the purposes of the efficiencies gained by multidistrict litigation. Moreover, such a 'severing' effect would create an even *greater* possibility for inconsistent pre-trial rulings. Quite literally, in the same case, it is not inconceivable that, for example, an MDL judge could find the same expert's testimony passes *Daubert* muster while another court, governing the Takeda or Novartis causes of action, could exclude it. In short, severing a single action between two Courts does not just create the possibility of inconsistent rulings from case to case, it also creates the possibility of inconsistent rulings *as applied to the same case*.

### D. Efforts at Coordination, With Over 150 Actions, is Futile

This Panel asked the parties to discuss "what steps they have taken to pursue alternatives to centralization (including, but not limited to, engaging in informal coordination of discovery and scheduling, and seeking Section 1404 transfer of one or more of the subject cases)." Dkt. No. 5. While Movant-Plaintiffs attempted to obtain the consent of AstraZeneca for coordination of all of their cases in the District of New Jersey by waiving any jurisdictional defenses it may have

to plaintiffs from other states filing in New Jersey, AstraZeneca was only willing to do so for some of the cases in that venue.[3] Unfortunately, other attempts at informal coordination have been futile. For example, the AstraZeneca defendants have sought motions to dismiss cases in some jurisdictions (but not all), even after having lost such motions in other jurisdictions.[4] Similarly, AstraZeneca sought a different Protective Order in the District of New Jersey than had been entered in the Southern District of Illinois.[5] Also, the Pfizer defendants recently sought a different electronic discovery order in the District of Pennsylvania than that had been entered in the Southern District of Illinois or the District of New Jersey. In short, with more than 150 cases filed in more than 20 jurisdictions, consistent rulings will be impossible.

As this panel has repeatedly noted, one of the hallmarks of MDL consolidation is to prevent inconsistent rulings and orders. *See, e.g., In re Farxiga (Dapagliflozin) Prod. Liab. Litig.*, No. MDL 2776, 2017 WL 1282904, at *2 (U.S. Jud. Pan. Mult. Lit. Apr. 6, 2017) ("Centralization will eliminate duplicative discovery, prevent inconsistent pretrial rulings on Daubert issues and other pretrial matters"); *In re Invokana (Canagliflozin) Prod. Liab. Litig.*, No. MDL 2750, 2016 WL 7221425, at *2 (U.S. Jud. Pan. Mult. Lit. Dec. 7, 2016) (same). This Panel

---

[3] Movant-plaintiffs have not, specifically, requested 28 U.S. Code § 1404 change of venue for any action because, as of the present time, counsel for movant-plaintiffs have not filed any cases outside of the District of New Jersey.

[4] *Compare, e.g., Richard Foster v. AstraZeneca Pharmaceuticals LP, et al.*, No. 4:16-cv-01106 (W.D. Mo., Mar. 22, 2017) (denial of 12(b)(6) motion to dismiss); *Isaac Ratshidaho v. AstraZeneca Pharmaceuticals LP, et al.*, No. 6:16-cv-03417 (W.D. Mo., Mar. 22, 2017) (same) with *Denise Crandell v. AstraZeneca Pharmaceuticals LP, et al.*, No. 6:16-cv-01460 (W.D. La., Mar. 28, 2017) (post-motion-to-dismiss loss filing of a near-identical motion to dismiss in another case in a different jurisdiction); *Penelope and Gary Costamagna v. The Procter & Gamble Company, et al.*, No. 2:17-cv-00409 (E.D. Cal., May , 2017) (same); *Celestine Barnes v. AstraZeneca Pharmaceuticals LP, et al.*, No. 1:17-cv-00142 (N.D. Ga. April 19, 2017) (same); *Roger Carpenter v. AstraZeneca Pharmaceuticals LP, et al.*, No. 0:16-cv-00159 (E.D. Ky., May 1, 2017) (same); and *Richard Witty Smith v. Astra Zeneca Pharmaceuticals LP, et al.*, No. 3:16-cv-00696 (M.D. La., April, 25, 2017) (same).

[5]*Compare Irma and James B. Coleman v. AstraZeneca Pharmaceuticals LP, et al., No. 3:17-cv-00130 (S.D. Ill. May 5, 2017) (Dkt. No. 54) (Entered Protective Order) with Goodstein v. AstraZeneca Pharmaceuticals LP, et al.; 2:16-cv-05143 (D.N.J.) (Dkt. No. 32 at 2) (May 8, 2017 deadline for submission of competing Protective Orders).

also has found that where actions are as numerous as present here, "[w]e are also not persuaded that informal coordination is a practicable solution here." *In re Ethicon Physiomesh Flexible Composite Hernia Mesh Prods. Liab. Litig.*, MDL No. 2782, 2017 WL 2402828 (J.P.M.L. June 2, 2017) (70 actions in 36 different judicial districts with dozens of law firms involved); *see also In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prods. Liab. Litig. (No. II),* 997 F. Supp. 2d 1354, at 1356 (J.P.M.L. Feb. 18, 2014) ("the presence of apparently unique counsel, coupled with the increased number of involved actions, districts, and judges, makes it highly difficult, if not impossible, to coordinate this litigation effectively on an informal basis"). Such is the present situation and centralization is needed to have consistent rulings.

### E. There is Broad Support for Centralization in the District of New Jersey

As noted above, there is broad support amongst both plaintiffs and defendants for centralization in the District of New Jersey, before Judge Claire C. Cecchi. For the reasons set forth below, as well as those stated in Movants' opening brief, Judge Cecchi has the demonstrated experience to manage the proposed PPI multidistrict litigation.

*First*, Judge Cecchi is well qualified to handle the complexities of pharmaceutical litigation. Her significant experience in pharmaceutical patent litigation has exposed her to the types of medical and scientific issues typical of pharmaceutical litigation. For example, in *Teva Neuroscience, Inc. v. Watson Labs., Inc.,* No. 2:10-CV-05078, 2013 WL 1595585 (D.N.J. Apr. 12, 2013), Judge Cecchi analyzed the complex chemical mechanism of action for patents involving a method of treating Parkinson's disease. And in *Altana Pharma AG v. Teva Pharm. USA, Inc.*, No. CIV.A 04-2355, 2009 WL 5818836 (D.N.J. Dec. 1, 2009), *aff'd,* No. CIV.A 04-2355, 2010 WL 451168 (D.N.J. Feb. 5, 2010), Judge Cecchi considered (and reconsidered) a complex discovery dispute regarding pharmaceutical expert reports. Most recently, Judge Cecchi oversaw a complex pharmaceutical patent trial involving no less than ten consolidated defendants in one case. *See In Re Sebela Patent Litigation*, No, 2:14-cv-06414 (D. NJ), Dkt. Nos. 253-5 (trial transcripts).

*Second*, Judge Cecchi has important MDL experience, which will be important in handling a multi-defendant MDL. She previously handled the MDL *In re Insurance Brokerage Antitrust Litigation*, MDL No. 1663, No. 2:04-cv-5184 (D. N.J. 2004), an MDL that involved more than 50 defendant insurance groups.

*Third*, the PPI cases are proceeding expeditiously in front of Judge Cecchi. Indeed, by the time or oral argument in front of this Panel, Judge Cecchi will have held five case management conferences. *See, e.g.,* Docket of *Goodstein v. AstraZeneca Pharmaceuticals, LP, et al.;* No. 2:16-cv-05143 (D.N.J.). Judge Cecchi has entered a Master Docket Order for all PPI cases, covering all major defendant groups before her: AstraZeneca, Pfizer, and Takeda. *Id.* at Dkt. No. 42. Further, with respect to the AstraZeneca defendants, Judge Cecchi has entered: 1) an ESI order, *Goodstein;* No. 2:16-cv-05143 (D.N.J.), Dkt. No. 35; 2) a Protective Order, *id.,* Dkt. No. 40; and 3) multiple scheduling orders. *Id.,* Dkt. Nos. 32, 39, 41. Additionally, Plaintiffs have served discovery on AstraZeneca, and AstraZeneca has produced its first set of responsive documents. *See, e.g., Id.,* Dkt. No. 39, at 2 (discussion the beginning production of documents). As of the submission of this Reply, corporate representative 30(b)(6) depositions are being scheduled, *see id.,* Dkt. No. 39, at 2 (June 1 deadline for initial topics, with depositions to be completed by September 1), and the parties are negotiating Plaintiff and Defense Fact Sheets, a Privilege Log Order and Search Terms. *See, e.g., id.,* Dkt. No. 41, at 2 (ordering deadlines for discussions on the same).

### III.  CONCLUSION

For the reasons stated herein and in their opening brief, Plaintiffs respectfully request that the Panel issue an order transferring all actions, as well as all subsequently filed related actions, for coordinated and consolidated pretrial proceedings to the United States District Court for the District of New Jersey in front of Judge Claire C. Cecchi.

Dated: July 5, 2017

Respectfully submitted,

*/s/ Christopher A. Seeger*
Christopher A. Seeger
Jeffrey Grand
Daniel R. Leathers
SEEGER WEISS LLP
77 Water Street
New York, New York 10005
Tel: (212) 584-0700
Fax: (212) 584-0799
cseeger@seegerweiss.com
jgrand@seegerweiss.com
dleathers@seegerweiss.com

*Attorneys for Movant-Plaintiffs*

**COUNSEL FOR PLAINTIFFS IN THE FOLLOWING ACTIONS:**

*Goodstein v. AstraZeneca Pharmaceuticals LP, et al.;* 2:16-cv-05143 (D.N.J.)
*Spratt v. AstraZeneca Pharmaceuticals LP, et al.;* 2:16-cv-05523 (D.N.J.)
*Garrison v. AstraZeneca Pharmaceuticals LP, et al.;* 2:17-cv-01207 (D.N.J.)
*Elliott v. AstraZeneca Pharmaceuticals LP, et al.;* 2:17-cv-01413 (D.N.J.)
*Savage v. AstraZeneca Pharmaceuticals LP, et al.;* 2:17-cv-00196 (D.N.J.)
*Aubrey v. AstraZeneca Pharmaceuticals LP, et al.;* 2:17-cv-00201 (D.N.J.)
*Toney v. AstraZeneca Pharmaceuticals LP, et al.;* 2:17-cv-00203 (D.N.J.)
*Stewart v. AstraZeneca Pharmaceuticals LP, et al.*; 2:17-cv-00206 (D.N.J.)
*Scott v. AstraZeneca Pharmaceuticals LP, et al.;* 2:17-cv-00208 (D.N.J.)
*Lee v. AstraZeneca Pharmaceuticals LP, et al.;* 2:17-cv-00212 (D.N.J.)
*Wilkerson v. AstraZeneca Pharmaceuticals LP, et al.;* 2:17-cv-00215 (D.N.J.)
*Gutierrez v. AstraZeneca Pharmaceuticals LP, et al.;* 2:17-cv-00217 (D.N.J.)
*Hudson v. AstraZeneca Pharmaceuticals LP, et al.;* 2:17-cv-00219 (D.N.J.)
*Massengill v. AstraZeneca Pharmaceuticals LP, et al.;* 2:17-cv-00761 (D.N.J.)
*Adkins v. AstraZeneca Pharmaceuticals LP, et al.;* 2:17-cv-00194 (D.N.J.)
*Pierre v. AstraZeneca Pharmaceuticals LP, et al.;* 2:17-cv-00198 (D.N.J.)
*Gilyard v. AstraZeneca Pharmaceuticals LP, et al.;* 2:17-cv-00202 (D.N.J.)
*Watkins v. AstraZeneca Pharmaceuticals LP, et al.;* 2:17-cv-00204 (D.N.J.)
*Graves v. AstraZeneca Pharmaceuticals LP, et al.;* 2:17-cv-00207 (D.N.J.)
*Carruthers v. AstraZeneca Pharmaceuticals LP, et al.;* 2:17-cv-00211 (D.N.J.)

*Wilburn v. AstraZeneca Pharmaceuticals LP, et al.;* 2:17-cv-00213 (D.N.J.)
*Layton v. AstraZeneca Pharmaceuticals LP, et al.;* 2:17-cv-00216 (D.N.J.)
*Hawkins v. AstraZeneca Pharmaceuticals LP, et al.;* 2:17-cv-00218 (D.N.J.)
*Lloyd v. AstraZeneca Pharmaceuticals LP, et al.;* 2:17-cv-00500 (D.N.J.)